IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD SMITH and CAROL SMITH, Individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RADIAN SETTLEMENT SERVICES, INC., and SHAWN P. MURPHY,<br><br>Defendants. | No. 4:23-CV-01652<br><br>(Chief Judge Brann) |

## MEMORANDUM OPINION

### FEBRUARY 16, 2024

**I.    BACKGROUND[1]**

Plaintiffs Edward and Carol Smith refinanced a mortgage secured by residential real estate in Pennsylvania in September 2022.[2] The Smiths were provided with a Closing Disclosure that itemized the closing costs of the loan.[3] Among those costs were "Services Borrower Did Not Shop For," which included a $225 notary fee charged by Defendant Radian Settlement Services, Inc.[4] The only notarial service performed by Radian's notary public at the closing of a residential real estate mortgage, including the Smiths, is the acknowledgment of the

---

[1]   The Court accepts as true the well-pleaded allegations of the Complaint. *See infra* Section II.
[2]   Compl., Doc. 1, ¶ 18.
[3]   *Id.*
[4]   *Id.*

mortgagee's signature on a mortgage and signature affidavit.[5] The Smiths, required to use the services of a notary public to close their mortgage, are among thousands of Radian customers who have been charged a fee in excess of the maximum fee authorized by Pennsylvania law.[6]

The Smiths initiated this lawsuit on behalf of themselves and other individuals similarly situated against Radian and its CEO, Shawn Murphy, with the filing of a Class Action Complaint on October 4, 2023.[7] In their Complaint, the Smiths bring claims under the Pennsylvania Revised Uniform Law on Notarial Acts (Count I), for unjust enrichment (Count II), and for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count III). Radian filed a motion to dismiss or, in the alternative, strike the class allegations which is fully briefed and ripe for disposition.[8]

## II. LAW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted." The United States Court of Appeals for the Third Circuit has instructed that, under the standard established by the Supreme Court of the United States in *Bell Atlantic Corp. v. Twombly*[9] and *Ashcroft*

---

[5] *Id.* ¶¶ 20-21.
[6] *Id.* ¶¶ 14-15, 34, 43.
[7] The Court refers to Defendants Radian and Murphy collectively as Radian.
[8] Mot. to Dismiss, Doc. 14; Br. Supp. MTD, Doc. 18; Opp., Doc. 24; Reply, Doc. 25.
[9] 550 U.S. 544 (2007).

*v. Iqbal*,[10] a court reviewing the sufficiency of a pleading must take three steps: (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they give rise to an entitlement to relief."[11]

## III.  ANALYSIS

### A.  Uniform Law on Notarial Acts

The viability of the Smith's Count I claim turns on whether Pennsylvania's Revised Uniform Law on Notarial Acts ("RULNA") provides for a private right of action. The Court finds that it does not.

Enacted in 2013, RULNA replaced the now-repealed Pennsylvania Notary Public Law.[12] Neither version of the statute expressly provided for a private right of action.[13] Whether either version of the statute implies a private right of action appears to be a matter of first impression. The Smiths assert that the Court should follow the lead of the Idaho Supreme Court's opinion in *616 Inc. v. Mae Properties, LLC*, which affirmed a grant of summary judgment of claims brought under Idaho's

---

[10]  556 U.S. 662 (2009).
[11]  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[12]  57 Pa. C.S. § 301, *et seq.*
[13]  *See Becker v. Chicago Title Ins. Co.*, No. CIV.A. 03-2292, 2004 WL 228672, at *10 (E.D. Pa. Feb. 4, 2004) (observing that there is no private right of action under the Pennsylvania Notary Public Law).

version of the uniform notarial act.[14] Pennsylvania law provides that "uniform statutes" such as RULNA "shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them."[15] Accordingly, courts interpreting Pennsylvania uniform statutes afford great deference decisions from sister states regarding such statutes.[16] However, *616 Inc.* is of limited utility here, as it does not appear that the parties argued, nor did that court consider whether the notarial act did in fact provide for a private right of action.[17]

The Pennsylvania Supreme Court has adopted a three-prong test to determine whether a statute creates an implied private cause of action: "(1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; and (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff."[18]

The Court begins with the second factor, legislative intent, as it "has been recognized as the 'central inquiry' of the analysis."[19] Pennsylvania law identifies

---

[14] *616 Inc. v. Mae Properties, LLC*, 524 P.3d 889 (Idaho 2023).
[15] 1 Pa. C.S. § 1927.
[16] *Continental Ins. Co. v. Schneider, Inc.*, 873 A.2d 1286, 1293-94 (Pa. 2005) (construing Pennsylvania UCC law in accordance with the decisions of courts of several sister states).
[17] *See generally* 524 P.3d 889. The Minnesota Court of Appeals also declined to address the issue after it was raised for the first time on appeal. *Michaels v. First USA Title, LLC*, 844 N.W.2d 528, 533 (Minn. App. 2014).
[18] *Schappell v. Motorists Mut. Ins. Co.*, 934 A.2d 1184, 1189 (Pa. 2007) (citing *Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623, 626 (Pa. 1999)).
[19] *Witthoeft*, 733 A.2d at 626; *accord* 1 Pa. C.S. § 1921(a).

several factors to be considered in ascertaining intent, such as "the occasion and necessity for the statute," "the mischief to be remedied," "the object to be attained," "the former law, if any, including other statues upon the same or similar subjects," and "the contemporaneous legislative history."[20] The Smith's have not provided, nor has the Court found any indication that the Pennsylvania General Assembly intended to create a private right of action.

The Smiths direct the Court to the statements of Representative Glenn R. Grell, a sponsor of the House Bill that would become RULNA.[21] Grell stated that the then-proposed legislation would improve upon the Pennsylvania Notary Public Law in several respects, none of which include providing for a private right of action.[22] The Smith's cite no authority in support of their logical leap that Representative Grell's statement that RULNA would "help prevent fraudulent notarization practices" implies a private right of action.[23] Whether a statute aims to prevent fraud is a matter distinct from whether it provides a right of action for victims of such fraud to recover damages. The Smith's argument to the contrary proves too much, as it would suggest that all criminal statutes, which are plainly intended to prevent criminal activity—including fraud—imply a private right of action for victims of criminal activity.[24]

---

[20]  1 Pa. C.S. § 1921(c).
[21]  Grell Mem., Doc. 24-1.
[22]  *Id.*
[23]  *Cf.* Doc. 24 at 8.
[24]  *D'Errico v. DeFazio*, 763 A.2d 424 (Pa. Super. 2000).

The Court also notes that, as the General Assembly intended for RULNA to improve upon a then-existing law, it makes it more likely that, had the legislature intended for a private right of action to be among those improvements, it would have expressly done so. The Court is again unmoved by the Smith's contrary argument that a private right of action should be implied because the statute does not expressly foreclose such a possibility. If legislative silence were sufficient to find an implied private right of action, there would be no need for a three-pronged balancing test; courts would simply look to whether the statute explicitly precluded private rights of action. Instead, courts are reluctant to find private rights of action where they are not expressly provided for by the statute.[25]

Further, RULNA provides that it "does not prevent a person from seeking and obtaining *other* criminal or civil remedies provided by law."[26] The Smith's tortured reading of this language aside, the text of RULNA clearly and unambiguously provides that the law should not be interpreted to foreclose alternative remedies just as the Smiths have done *in this suit*.

Nor are the Smiths of the class for whose especial benefit the statute was enacted. As discussed above, the Smith's contention that the RULNA was enacted for the special benefit of anyone harmed by the statute would create private rights of

---

[25] *E.g.*, *Wagner v. Anzon, Inc.*, 684 A.2d 570, 575 (Pa. Super. 1996); *accord Russell v. Chesapeake Appalachia, L.L.C.*, No. 4:14-CV-00148, 2014 WL 6634892, at *3 (M.D. Pa. Nov. 21, 2014).
[26] 57 Pa. C.S. § 323(c) (emphasis added).

action in every criminal statute. When determining whether a statute was enacted for the benefit of a class of people, courts consider whether there exists a "foreseeable and identifiable class."[27] RULNA does no such thing. Instead, it focuses entirely on the regulated entities, and empowers only the Pennsylvania Department of State with the authority to enforce the statute.[28]

Accordingly, the Court will dismiss Count I with prejudice.

### B. Voluntary Payment Doctrine

"Under the voluntary payment defense, 'one who has voluntarily paid money with full knowledge, or means of knowledge of all the facts, without any fraud having been practiced upon him . . . cannot recover it back by reason of the payment having been made under a mistake or error as to the applicable rules of law.'"[29] Though "[t]he voluntary payment doctrine is not properly considered at the motion to dismiss stage when the factual record is insufficient to determine its viability,"[30] "[t]he court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint."[31] This is such a case.

---

[27] *Witthoeft*, 733 A.2d at 627.
[28] *See Albert v. Erie Ins. Exch.*, 65 A.3d 923, 931 (Pa. Super. 2013) (no private cause of action where enforcement authority was vested in Pennsylvania Department of Insurance); *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 117 (2d Cir. 2007) (observing that, under Supreme Court precedent, federal statutes are not enacted for the especial benefit of a certain class where the focus of the statute is on the entities to be regulated).
[29] *Liss & Marion, P.C. v. Recordex Acq. Corp.*, 983 A.2d 652, 661 (Pa. 2009) (quoting *In re Kennedy's Estate*, 321 Pa. 225, 183 A. 798, 802 (1936)).
[30] *McLean v. Big Lots Inc.*, 542 F. Supp. 3d 343, 354 (W.D. Pa. 2021) (quoting *Gallo v. PHH Mortg. Corp.*, 916 F.Supp.2d 537, 553 (D.N.J. 2012)).
[31] *Id.* (citing *Peele v. McLaughlin*, 641 F. App'x 111, 112 (3d Cir. 2016) (per curiam)).

The Closing Disclosure clearly stated that Radian would charge $225 for notary fees and the Complaint alleges that the notary services performed by Radian were "typical" of the notary services provided in connection with the execution of a residential mortgage.[32] There is no allegation that Radian misrepresented the service to be provided.[33] The Smiths try to avoid the applicability of the voluntary payment doctrine by suggesting that Radian misrepresented the legality of its fees. However, no such misrepresentation is alleged. Rather, the Smiths *assumed* that the fee was in accordance with the law. Money paid voluntarily, although under a mistake or ignorance of the law cannot be recovered.[34]

The Court similarly rejects the Smiths' argument that they only made the payment under duress, as they were required to use the services of a notary public in connection with the settlement of their mortgage.[35] While the notarial services may have been required to settle the Smiths' mortgage, absent from the Complaint is any allegation that the Smiths were required to use *Radian's* services.[36]

---

[32] Compl. ¶¶ 20-21.
[33] *Cf. Liss & Marion*, 983 A.2d at 661 (rejecting voluntary payment defense where defendant misrepresented the product in invoices); *Gotham Distribg. Corp. v. United Parcel Serv. Co., Inc.*, No. 14-CV-6165, 2016 WL 4039642, at *3-4 (E.D. Pa. July 28, 2016) (same).
[34] *Acme Markets, Inc. v. Valley View Shopping Ctr., Inc.*, 493 A.2d 736, 737 (Pa. Super. 1985).
[35] Doc. 24 at 31 (citing Compl. ¶¶ 25, 27).
[36] The Court notes that borrowers are entitled to shop for certain services in connection with the settlement of a residential mortgage. *Loan Estimate Explainer*, CFPB, https://www.consumerfinance.gov/owning-a-home/loan-estimate/ (last accessed Feb. 8, 2024). The Court may take judicial notice of information contained on the website of a governmental agency. *Landair Transp., Inc. v. Del's Truck & Auto Repair*, No. 1:17-CV-0723, 2018 WL 950208 at *2 n.1 (M.D. Pa. Feb. 20, 2018) (citing *Abulkhair v. Comm'r of Soc. Sec.*, 450 F. App'x. 117, 119 n.3 (3d Cir. 2011); *accord Morgan v. Pennsylvania*, No. 4:23-CV-00872, 2023 WL 6461245 at *3 (M.D. Pa. Oct. 2, 2023) (Brann, J.) (citing *In re Google Inc.*,

Accordingly, the Court will dismiss Counts II and III without prejudice.[37] The Smiths may attempt to amend their Complaint to show that the payment of Radian's notary fee was not voluntary. However, they are advised not to attempt to stave off dismissal by simply creatively re-stating facts already alleged. If there are no new facts to be alleged, or existing facts that may be alleged more completely, amendment is discouraged.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

806 F.3d 125, 133 n.12 (3d Cir. 2015). *See also Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017)).

[37] Though the Smiths appear to suggest that only Count II could be subject to dismissal under the voluntary payment doctrine, claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law are also subject to the doctrine. *Cf. McLean*, 542 F. Supp. 3d at 354 (considering voluntary payment doctrine as defense to UTPCPL claim).

9